UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WINNIE McDANIEL,

        Plaintiff,                     Case No. 5:05-cv-76

v.                                                 Hon. Wendell A. Miles

COMMISSIONER OF SOCIAL SECURITY,
        Defendant.
                                                /


OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION


      Plaintiff Winnie McDaniel filed this action for judicial review of the final decision of the Commissioner of Social Security that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 416(i), 423. United States Magistrate Judge Ellen S. Carmody submitted a Report and Recommendation, (dkt #13), recommending that the decision of the Commissioner of Social Security be affirmed. Plaintiff filed objections to the Magistrate Judge's Report and Recommendation, (dkt. #16). For the reasons that follow, the Court overrules Plaintiff's objections, and adopts the Report and Recommendation of the Magistrate Judge in its entirety.

Standard of Review

      When objections have been made to a magistrate judge's report and recommendation, the district court performs a *de novo* review of those portions of the report and recommendation to which objections have been made. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Judicial review

of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. Warner v. Comm'r of Soc. Sec., 375 F. 3d 387, 390 (6th Cir., 2004). There is substantial evidence when a "'reasonable mind might accept'" the relevant evidence "'as adequate to support a conclusion.'" Id., quoting Kirk v. Sec. of Health & Human Servs., 667 F. 2d 524, 535 (6th Cir. 1981). If there is substantial evidence supporting the Commissioner's decision, the court must defer to the decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion . . . .'" Id., quoting Wright v. Massanaari, 321 F. 3d 611, 614 (6th Cir. 2003). The court may not make credibility determinations or resolve conflicts in the evidence. Walters v. Comm'r of Soc. Sec., 127 F. 3d 525, 528 (6th Cir. 1997).

## Background

Plaintiff claims she became disabled on December 23, 2002, at age 50, due to pericardial effusion (Tr. 18, 44-46, 57, 327), back pain, and exhaustion. (Tr. 355). She also reported that she was depressed. (Tr. 366). She last worked in November 2002 as a nurse assistant. (Tr. 223). Plaintiff's application for DIB benefits was initially denied. She requested a hearing before an Administrative Law Judge (ALJ), and on March 22, 2004, the ALJ found that Plaintiff was not disabled. (Tr. 12-21). The ALJ's decision became final when the Appeals Council declined review.

The ALJ concluded that Plaintiff suffered from the severe impairments of pericarditis and affective disorder (Tr. 21), had moderate restrictions in daily living activities, and moderate difficulties in social functioning and maintaining concentration, persistence or pace. (Tr. 24).

The ALJ also concluded that Plaintiff's allegations of pain and limitations were "somewhat overstated and inconsistent with the available evidence." (Tr. 22). The ALJ found that Plaintiff retained the residual functional capacity for light work with certain restrictions. The light work must (1) be simple, low stress, and unskilled, (2) involve no reading, calculating, reasoning or problem solving, (3) involve only brief and superficial contact with the public, (4) allow her to be absent once a month, and (5) not involve production quotas. (Tr. 24). The ALJ found that Plaintiff was not able to perform her past relevant work as a cashier, assembler and certified nursing assistant. (Tr. 18, 86-90, 355-58). Despite the limitations on her ability to do light work, based upon the testimony of the vocational expert, the ALJ found there were a significant number of jobs in the national economy that Plaintiff could perform.

## Discussion

The Magistrate Judge found that the ALJ properly: (a) considered Plaintiff's impairments, (b) assessed the medical evidence, and (c) evaluated Plaintiff's subjective complaints. Plaintiff argues that the ALJ: (1) did not consider her fatigue caused by hypothyroidism, (2) failed to consider the evidence demonstrating that Plaintiff suffered pain, (3) failed to give proper weight to the opinion of Dr. Bernaiche, and (4) failed to consider Plaintiff's medication.

    A.    <u>Hypothyroidism and fatigue</u>

Plaintiff argues that the ALJ failed to consider her hypothyroidism, which could cause the extreme fatigue reported by Plaintiff. Plaintiff was diagnosed with a hypothyroid condition in July 2001. (Tr. 209). Plaintiff was examined by Dr. Duda in February 2003. She reported

3

feeling tired and weak (Tr. 164), and the doctor opined that these symptoms may be related to her thyroid condition. (Tr. 164). In March 2003, Dr. Meier examined Plaintiff and wrote that she had hypothyroidism, which was being treated with thyroid replacement. (Tr. 169). In July 2003, Plaintiff reported to Dr. Ved Gossain that she was experiencing hair loss, fatigue and depression. (Tr. 285). Dr. Gossain concluded that Plaintiff's symptoms suggested hypothyroidism. (Tr. 287). Plaintiff's thyroid medication was subsequently increased. (Tr. 318). In April 2004, Dr. Joel Cohn of the Thoracic Cardiovascular Institute concluded that Plaintiff's reported fatigue might be related to "profound hypothyroidism." (Tr. 320). He intended to order a test to determine if her hypothyroidism was being adequately treated, (Tr. 320), although the results are not revealed in later reports.

When assessing a claimant's residual functional capacity, the ALJ must consider all physical and mental impairments, whether or not the ALJ found them to be severe. If the ALJ adequately considered Plaintiff's fatigue when he evaluated her residual functional capacity and the types of jobs that were still available to her, there is no reversible error. Masers v. Secretary of Health and Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ considered "the nature, location, onset, duration, frequency, radiation, and intensity of the claimant's pain and other symptoms," and that Plaintiff "does not have a lot of energy and spends most of the time 'moping around.'" (Tr. 22). The ALJ's hypothetical to the vocational expert included limitations that could result from fatigue, such as jobs that do not require a quota and that allow for a once per month absence. (Tr. 372). The record adequately demonstrates that the ALJ took into account Plaintiff's reported fatigue. See Allison v. Comm'r of Soc. Sec.,

4

347 F.Supp. 2d 439, 445 (E.D. Mich. 2004) (explaining that consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted), citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (stating that the record must show that "the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence"); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (same).

    B. Pain evaluation

The ALJ found that Plaintiff's testimony "with respect to the extent and severity of her impairment and the resulting functional limitations, to be somewhat overstated and inconsistent with the available evidence." (Tr. 22). The magistrate judge concluded that the ALJ properly discounted Plaintiff's subjective allegations. Plaintiff disagrees, contending that her complaints of pain are fully supported by objective medical evidence.

Plaintiff testified at her hearing on May 4, 2004, that she has constant, lower back pain that radiates down her thighs (Tr.361, 367). She can walk no further than three blocks without experiencing severe pain (Tr. 363). Earlier, on January 30, 2003, she reported cooking, doing light housework, grocery shopping, and attending church (Tr. 69), sewing, watching movies, and dancing. (Tr. 70). Six weeks later, on March 14, 2003, she reported that she could not walk from her bed to the bathroom, but had to crawl the distance (Tr. 83), could not do grocery shopping, and needed assistance with her personal care. (Tr. 84). On August 18, 2003, Plaintiff was examined by Dr. Bernaiche. His objective findings revealed a decreased range of motion in the right shoulder and both hips, and decreased reflexes in both legs. (Tr. 256). On August 27,

5

2003, she was examined by Dr. Paul Resnik. Dr. Resnik noted an MRI done in May 2003 showed degenerative disc changes at L-4-05 and L5-S1, and disc protrusion at L4-5 in conjunction with facet and ligamentous hypertrophic changes. (Tr. 289). The doctor's examination revealed no evidence of spasticity in the trapezius, paraspinous or parascapular muscles. No tenderness in the sacroiliac joints, but moderate tenderness over the lumbar facets. Straight leg raising was negative. (Tr. 290). Other than pain medication, Plaintiff was not receiving treatment for her back problem.

Subjective complaints of pain, standing alone, are not conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). The first step in evaluating subjective complaints of disabling pain, is to determine whether there is objective medical evidence of an underlying medical condition. If there is, the second step focuses on (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the disabling pain. Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986). Because there are situations where pain may cause a greater restriction than can be demonstrated by objective evidence, reasonable conclusions as to one's ability to do work activities can be derived from other information in conjunction with medical evidence. Stanley v. Sec. of Health & Human Servs., 39 F.3d 115, 117-18 (6th Cir.1994). However, the Court must afford "great weight and deference" to the Commissioner's credibility findings because the "ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997) (noting that credibility determinations are the province of

the Commissioner, not the reviewing court).  When a claimant's testimony conflicts with medical records and other evidence, an ALJ appropriately may discount the claimant's testimony.  Id. at 531.

There is objective medical evidence in the record that Plaintiff has some degenerative changes in her back.  Plaintiff's reported level of pain in January 2003, was not inconsistent with either the objective evidence or the ALJ's assessment of her residual functional capacity consistent.  However, her subsequent reports only months later of severe, totally disabling pain far exceeds that which could be expected by the objective medical evidence.  Accordingly, ample evidence supports the ALJ's decision regarding Plaintiff's subjective complaints.

    C. Dr. Bernaiche's opinion

Dr. Bernaiche's only examination of Plaintiff occurred on August 18, 2003, at the request of her attorney. (Tr. 254).  As previously noted, his objective findings revealed a decreased range of motion in the right shoulder and both hips, and decreased reflexes in both legs.  (Tr. 256).  He concluded that Plaintiff could be expected to be absent from work "about four times a month," as a result of her impairments or treatment, yet also concluded that her impairments were not likely to cause "good days" and "bad days." (Tr. 259).  Dr. Bernaiche indicated that Plaintiff was not capable of even low stress jobs "per pt. report."  (Tr. 256).  The doctor, however, wrote that "pt. likely could withstand low to moderate stress if she has proper rehabilitation," which should consist of "[a] short course of increased physical activity under supervision to tolerance. . . . " (Tr. 256).  The ALJ gave "little, if any, weight" to Dr. Bernaiche's assessments, finding them inconsistent.

7

The regulatory guidelines for weighing opinions by various medical sources direct an ALJ to consider the extent that opinions are consistent, supported by relevant evidence, and based on treating relationships that are sufficiently lengthy and in-depth. 20 C.F.R. § 416.927(d). Dr. Bernaiche's opinion rendered after one examination appears to be based almost entirely on subjective information. The ALJ's decision to give little weight to Dr. Bernaiche's conclusion based on Plaintiff's subjective statements was consistent with the guidelines, particularly where a review of the entire report shows that the reasons for discounting Dr. Bernaiche's conclusion regarding disability were legitimate.

### D. Plaintiff's medications

Plaintiff testified that at the time of her hearing she was taking Robaxin, Neurontin and Prozac and Motrin as needed. (Tr. 360). Her medications sometimes caused dizziness and nausea. (365). Plaintiff's testimony does not reveal the frequency, intensity or duration of these reported side effects. Plaintiff argues that neither the ALJ nor the magistrate judge specifically discussed the effects of her medications. Citing Gray v. Comm'r of Soc. Sec., No. 00-cv-10434-BC, 2002 WL 1791931 (E.D. Mich. July 30, 2002), Plaintiff contends that "[i]gnoring this factor of credibility is tantamount to accusing the prescribing physicians of malpractice." Pl.'s Objections to Magistrate's Report and Recommendation at 3 (docket #16). The situation in the present case is distinguishable from Gray. In Gray the ALJ rejected the conclusions of the plaintiff's treating physician, concluding that the doctor merely recorded the plaintiff's subjective complaints and prescribed medication. The district court reasoned that:

> There is nothing in the record from which one might conclude that the
> doctor departed from standard medical practice which consists of

8

>reviewing the patient's history, discussing the patient's symptoms, observing objective signs during examination, analyzing the results, and developing and executing a plan. In fact, one would have to presume that Dr. Vincent engaged in a form of malpractice by continuing to prescribe a strong narcotic pain medication over a two-year period without conducting any physical examination of the plaintiff during the 20 visits recorded in his record.

Id. at *2. Here, the ALJ's conclusion does not suggest that any of Plaintiff's physicians wrongfully prescribed medication, but rather that Plaintiff's account of the side effects of correctly prescribed medications was not fully credible. The ALJ gave consideration to the "type of medication, dosage, effectiveness and side effects." (Tr. 22). The Court has reviewed the medical records, and found no evidence that Plaintiff ever complained to any physician about the side effects of her medication, or asked for a modification of the medicines. Thus, based upon the record before him, the ALJ did not err in discrediting Plaintiff's claim that she suffered adverse side effects from her medications. Steiner v. Sec. of Health and Human Servs., 859 F. 2d 1228, 1231 (6th Cir. 1987); and see Burns v. Barnard, 312 F.3d 113, 130-31 (3d Cir. 2002) (finding the ALJ's decision to discount the plaintiff's allegations of side effects was supported by substantial evidence where the record contained "no significant complaints of side effects from medication."); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir.1993) (claimant's allegations of medication-related dizziness, drowsiness, and sleepiness were inconsistent with record, as he had never complained to physician about alleged side effects); Essary v. Comm'r of Soc. Sec., 114 F. App'x 662, 665-66 (6th Cir. 2004) (affirming ALJ where the plaintiff testified that she suffered dizziness and drowsiness as a result of her medication although the medical records made no mention that she reported such side effects to any of her physicians).

Conclusion

The Court has performed a *de novo* consideration of those portions of the Report and Recommendation to which objection has been made, and finds that the Magistrate Judge reached the correct conclusion in the Report and Recommendation. Accordingly, the Court OVERRULES the Plaintiff's objections (docket #16), ACCEPTS AND ADOPTS the Magistrate Judge's Report and Recommendation (docket #13), and affirms the decision of the Commissioner of Social Security.

So ordered this 25th day of September, 2006.

    /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge